### ESSAW HALL *v.* STATE OF MARYLAND

[No. 103, Initial Term, 1967.]

*Decided June 7, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and RUSSELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*John T. Bell* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *James F. Tomes, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

PER CURIAM.

The Appellant, Essaw Hall, was convicted by a jury in the Circuit Court for Montgomery County of common-law burglary and sentenced to ten years in the Maryland Penitentiary.

In this appeal, it is contended that the State failed to prove a *prima facie* case and, therefore, the trial court erred in denying the Appellant's motion for judgment of acquittal which was made at the conclusion of the State's case.

The record indicates that after the motion was denied, testi-

mony was offered on behalf of the Appellant. Under Maryland Rule 755b, this had the effect of withdrawing the motion. Accordingly, the contention that the trial court erred in not granting the motion for judgment of acquittal at the conclusion of the State's case is not properly before us. *Jason v. State,* 1 Md. App. 136.

The Appellant failed to renew the motion for judgment of acquittal at the conclusion of the entire case and, accordingly, this court is precluded from reviewing the sufficiency of the evidence. *Jason v. State, supra,* and cases cited therein.

Even if the question were properly before us, we would have no difficulty in finding that there was legally sufficient evidence, or reasonable inferences therefrom, from which the jury could find the Appellant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443, 448 (1964); *Coates v. State,* 232 Md. 72, 74 (1963).

The record shows that at 2:00 a.m. in the morning, the occupants of a dwelling house in Silver Spring were awakened by the Appellant's beating on the front door with sufficient force to break the panel thereof. When asked by the owner to identify himself, he simply said "Let me in." The owner immediately went upstairs, procured a 22 caliber rifle and had his wife call the police. In the meantime, the Appellant went around to a side door, broke the window pane therein with a broom stick, reached in, unlatched the door and pushed it open. When confronted by the owner with the rifle, he ran. The police arrived at this time and after a short search found the Appellant leaning against the back of the house. The police were forced to hold him at gun point because he threatened to run away and he resisted a search of his person to such an extent that it was necessary to handcuff him. The police testified that at this time the Appellant's eyes "were quite wide," he was frothing at the mouth and was having a muscle spasm. When taken to the police station, the Appellant refused to give his name, address or what he was doing in the area.

The Appellant did not testify. However, an individual who was with him earlier in the evening testified that the Appellant accompanied him and another individual to a tavern between 7:30 p.m. and 8:30 p.m. but he did not see the Appel-

lant consume any alcoholic beverage; that they then went to a party near Norbeck, stayed there approximately two and a half hours during which time the Appellant consumed nearly all of a six ounce cup of whiskey. In leaving the party the Appellant's "eyes were sort of dreary," and he had to be assisted. They then drove to Silver Spring where the Appellant got out and sat on the curb holding his head in his hands. They hailed a cab for the Appellant; "when the cab came, they was standing there talking about money and Essaw shouted for us to go ahead and so we went."

The elements necessary to constitute the crime of common-law burglary include a breaking and entering in the nighttime of a dwelling house of another with intent to commit a felony therein. *State v. Wiley,* 173 Md. 119. It is contended on behalf of the Appellant that there was no proof of his intent to commit a felony and that his conduct was that of an inebriated person rather than of a burglar.

> "It is well-settled law that in prosecutions for burglary the intent may be inferred from the circumstances." *Irving v. State,* 230 Md. 364 (1963).

Moreover, the Court of Appeals of Maryland has said:

> "As a defense to intent [here] the accused must show that he was so intoxicated that he was robbed of his mental faculties. He is criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing." *Beall v. State,* 203 Md. 380, 386 (1953).

Without further reviewing the evidence detailed above it is apparent that it was legally sufficient to enable the jury to find that the Appellant's mental faculties were such that he knew what he was doing and that he was prevented from carrying out his felonious intent only by the confrontation with a 22 caliber rifle pointed at him by the owner of the dwelling house.

*Judgment affirmed.*