BILLY EDWARD JENNINGS, a/k/a WILLIAM EDWARD JENNINGS *v.* STATE OF MARYLAND

[No. 135, September Term, 1969.]

*Decided December 10, 1969.*

314

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*John F. Fader, II,* for appellant.

*James L. Bundy, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Don-
aldson C. Cole, State's Attorney for Cecil County,* and
*Paul S. Podolak, Assistant State's Attorney for Cecil
County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Billy Edward Jennings (appellant) and George Lewis
Creswell were jointly indicted but separately tried in the
Circuit Court for Cecil County. The indictment con-
tained nine counts. The first seven counts charged the
commission of offenses on 1 October 1968 with respect
to the dwelling house and personal property of Marple
H. Lynch and Mildred N. Lynch, his wife—burglary and
related offenses. Counts eight and nine charged the com-
mission of offenses on 2 October 1968 with respect to
the Independent Tire Company, Inc., trading as Elkton
Firestone Store (Firestone)—storehouse breaking with
intent feloniously to steal and being rogues and vaga-
bonds. Appellant was found guilty by a jury of the bur-
glary of the Lynch dwelling (1st count), grand larceny
of the Lynch personal property (3rd count) and the
breaking of Firestone Storehouse (8th count). He was
sentenced to 10 years on the 1st count to run consecu-
tively to a sentence previously imposed in another case,

to 10 years on the 3rd count to run concurrently with the sentence under the 1st count, and to 10 years under the 8th count to run consecutively with the sentence imposed under the 1st count.

## THE MOTION FOR SEVERANCE OF COUNTS

Prior to trial appellant moved to sever the 8th and 9th counts on the ground that the offenses thereby charged were "independent of the crimes alleged in counts one through seven and their trial along with counts one through seven will unduly prejudice the rights of the defendant."

Maryland Rule 716 provides that two or more offenses may be charged in the same indictment. But by Rule 735, if it appears that an accused will be prejudiced by joinder of offenses for trial together, the court may order separate trials of counts or provide such other relief justice requires.[1] Whether or not to order separate trials is within the sound discretion of the trial court. See *Wanzer v. State*, 202 Md. 601.[2] Upon argument on the motion the court denied the motion, finding that the offenses were so interrelated that it was proper to try them together. It was inherent in the ruling that it did not appear to the court that the appellant would be prejudiced, within the meaning of that term under the Rule, and we cannot say, on the record before us, that the denial of the motion was an abuse of judicial discretion. This is so because even upon separate trials, we believe that evidence relating to the offenses charged in the first seven counts would have been admissible in a trial under the eighth and ninth counts and vice versa.

"As a general rule, upon the trial of a criminal case, evidence of the commission of other independent crimes by the defendant is inadmis-

---

1. A motion under Rule 735 may be made only before the jury is sworn, as was here done, or, where trial by jury is waived, before any evidence is received.

2. We think that Rule 735 conforms in substance with the common law rule discussed and applied in *Wanzer*.

sible to show either guilt or that the defendant would be likely to commit the crime with which he is charged * * *. Evidence of the commission of· independent crimes is irrelevant where it has no tendency to prove some material fact in connection with the crime charged or where it merely tends to show that the accused is a criminal generally. * * * If evidence is relevant, it is immaterial that it shows the commission of another crime. *Wharton, Criminal Evidence,* 11th Ed., § 343. 'If evidence of another crime tends directly to prove the defendant guilty of the crime for which he is being tried, or if the other crime and the crime charged are so linked together in point of time or circumstances that one cannot be fully shown without proving the other, the general· rule of exclusion does not apply. * * * If proof of another crime explains or accounts for the crime for which the accused is on trial, it is relevant and competent. * * * collateral offenses may be shown to prove the mental processes or mental attitude of the accused' such as motive or intent. *Wharton, supra,* § 345. See also 2 *Wigmore, Evidence,* 3d Ed., § 363; *Underhill, Criminal Evidence,* 4th Ed., §§ 180-184. The Maryland cases fully recognize these principles." *Wood v. State,* 191 Md. 658, 664. See *Bryant v. State,* 207 Md. 565, 586.

Among the articles stolen from the Lynch dwelling were a $2 bill, a revolver and a blackjack. At the time appellant and Creswell were apprehended at the scene of the Firestone breaking, Creswell threw a revolver under the police car. A blackjack was found about 10 feet from the spot where the arresting officer had ordered appellant to lie on the ground. A two dollar bill was found on the person of appellant. The revolver was positively identified by Mr. Lynch as belonging to him and

stolen at the time of the burglary. The blackjack appeared to be one he owned and which he kept in the same drawer with the gun. The $2 bill was identified by Mrs. Lynch. She identified it from "some writing" on it, particularly the word "Illinois" and another word that looked like "Junior." It had been kept in a little chest in her home, folded, with a silver dollar on it, for approximately 20 years. It was stolen during the burglary. Further the breaking of both the storehouse and the dwelling had been by kicking in a door. There was testimony by a special agent of the F.B.I., an expert in matters of questioned documents, shoeprints and tire evidence, that he made a comparison of the impressions found on the doors with the appellant's shoes. He found that "the questioned impressions have the same basic design and the approximate size as the heel of the appellant's right shoe." We think it clear that the offenses relating to the Lynches and the offenses relating to Firestone were so linked together in point of time or circumstances that it was proper in proving one, in order to fully show it, to offer evidence tending to prove the other. Evidence relating to either the Lynch offense or the Firestone offense tended to establish, in proving the other, the appellant's motive, intent, and identity, the absence of mistake or accident and a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tended to establish the other. See *Wethington v. State,* 3 Md. App. 237, 240. And we note that one of the considerations in denying separate trials is to save time and expense they would entail. See *Williams v. State,* 214 Md. 143; *McLaughlin v. State,* 3 Md. App. 515.

We hold there was no error in the denial of the motion for severance.

## THE SUFFICIENCY OF THE EVIDENCE

Our function as to review of the evidence in a jury trial is to determine whether the court erred in denying a motion for judgment of acquittal made at the close of

all the evidence. The test is whether the direct evidence or rational inferences therefrom before the trial court were sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of the crime charged. *Williams v. State,* 5 Md. App. 450. The required motion was here made and denied.

## The Firestone Breaking

Appellant does not attack the sufficiency of the evidence to show his criminal agency in the breaking of the Firestone Storehouse. And he only attacks the sufficiency of the evidence as to the *corpus delicti* in one respect. He claims that the proof did not show a breaking and entering of the storehouse. The crime charged was that proscribed by Maryland Code, Art. 27, § 32. Its provisions require proof of a breaking but do not require proof of an entry. *Ball v. State,* 7 Md. App. 219, 224-225. An actual breaking may be made by an unloosening, removing or displacing any covering or fastening of the premises. *Jones v. State,* 2 Md. App. 356, 360.

In the case before us a police officer, who arrived on the scene within seconds after receiving a radio communication at 3:40 A.M. on 2 October 1968 that a burglar alarm in the storehouse had been activated, testified that the glass in a door leading into the warehouse was broken and the door "appeared to be a little ajar." The manager of the Firestone store testified that the storehouse was secured at 5:00 P.M. on 1 October, the doors and windows being locked. This evidence was sufficient to show a breaking of the storehouse.

We hold there was no error in the denial of the motion for judgment of acquittal as to the 8th count.

## The Burglary of the Lynch Dwelling—The Concurrent Sentence Doctrine

Appellant was convicted of common law burglary, the sentence for which is proscribed by Code, Art. 27, § 29. See *Reagan v. State,* 4 Md. App. 590. He was also convicted of grand larceny of the goods stolen in the bur-

glary. This was proper. Common law burglary is the breaking and entering of a dwelling house of another in the nighttime with intent to commit a felony therein. *Hall v. State,* 1 Md. App. 392, 395. For reasons comparable to those in our holdings that convictions of storehouse breaking with intent to steal and larceny do not merge, *Shelton v. State,* 3 Md. App. 394, 402, and see *Tender v. State,* 2 Md. App. 692, note 5 at 700, convictions of common law burglary and grand larceny do not merge nor are they inconsistent. Appellant here was given concurrent sentences of the same length on the convictions of burglary and grand larceny. He does not contest the validity of the grand larceny conviction. It may well be, therefore, that the concurrent sentence doctrine —the existence of a valid concurrent sentence removes the necessary elements of a justiciable controversy — is applicable and dispositive of appellant's contention as to the burglary conviction. The rationale of the doctrine has been recognized in this State. See *Meade v. State,* 198 Md. 489, 491. The Supreme Court in *Benton v. State of Maryland,* 89 S. Ct. 2056, decided 23 June 1969, stated that "the concurrent sentence rule may have some continuing validity as a rule of judicial convenience." At 2061. But it did not apply it because of the special circumstances in that case.

In any event, we hold that the trial court did not err in denying the motion for judgment of acquittal as to the burglary count. Appellant does not attack the sufficiency of the proof with respect to his criminal agency as to the burglary. He attacks the sufficiency of the evidence as to the *corpus delicti* on the sole issue that the breaking of the Lynch dwelling was not in the nighttime. Mr. Lynch testified that he secured his dwelling at 8:00 A.M. on 1 October 1968 when he left the premises, all the doors including the side cellar door being locked. When he returned at 11:00 P.M. about four hours before the apprehension of appellant, the house had been ransacked and personal property stolen. He notified the police and they promptly arrived. A police officer found

that the screen on a porch had been cut and that there had been an attempted entry through a door leading into the house. He found that actual entry had been made by kicking in a cellar door. Mrs. Lynch testified that she had left the house about 2:00 P.M. on 30 September and returned at 10:30 A.M. on 2 October. "The house was in a state of shambles. Bureau drawers and corner cupboards—just a mess in general." Goods of the value of $1000 had been stolen. She described the condition of the house in detail. She said: "[T]he shades had been drawn in most of the upstairs bedrooms and a kerosene lamp had been brought from the playroom in the basement, up to the kitchen. We picked up, approximately, 15 burned out matches all through the house. In the guest room, there were candle drippings all over the floor and on a desk and in a closet and there was a candle of that color in the room." On cross-examination she said that the window shades in the house were white and that it would not be "awfully dark" when they were drawn (in the daytime). The shades had not been drawn when she left the house.

This evidence was sufficient for the court to submit the case to the jury on the question of whether the breaking and entering had been in the nighttime. It was a rational inference that the burglars had been in the house when it was dark and the jury could have concluded beyond a reasonable doubt that the breaking and entering had been in the nighttime. See *Boswell and Poe v. State*, 5 Md. App. 571, 582; *Wiggins v. State*, 4 Md. App. 95, note 9 at 109-110.

*Judgments affirmed.*