### WILLIAM JOHNSON *v.* STATE OF MARYLAND

[No. 81, September Term, 1968.]

 

 

 

 

 

 

*Decided December 18, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Howard E. Wallin* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *C. Allan Herndon, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant, William Johnson, was convicted of storehouse breaking with intent to steal goods of the value of one hundred dollars ($100) or more (Md. Code, Art. 27, sec. 32) and sentenced to serve five years.

At approximately 2:20 a.m., on December 16, 1967, the appellant was found in the Purple Heart Thrift Store by the police and a representative of a burglar alarm company who were there in response to the sounding of a silent alarm. The appellant was lying face down in a rear aisle on the first floor of the building. The representative of the alarm company testified that entrance had been gained through a skylight in the roof of the four-story building and that the alarm had been activated by the opening of a door at the bottom of a stairway on the first floor, approximately five feet from where the appellant was found. He also testified that the appellant "claimed he was hurt" and that although he did not smell his breath, he detected no odor of alcohol on the appellant.

The appellant, who described himself as a free-lance commercial photographer, testified that he and his brother had spent the evening in a night club taking photographs of customers "and I decided to drink a little more than usual." When asked, what happened, he replied: "I got plastered." He further stated that he left the night club about 2:00 a.m. and "I staggered or tried to make it to my girl friend's house." When he arrived at her apartment door "I decided not to go in because it was

too late to disturb my girl friend" and "I decided to go home, I believe." According to the appellant, "the next conscious moment I had was when the policeman picking me up under my arm." He admitted that the police took from him a screw driver but he asserted that this had been used "that day to fix the refrigerator in my girl friend's house."

His half brother took the stand and confirmed that they had been together at the night club and that he left the appellant at the door of an apartment on the ninth floor of an apartment building. When asked about the condition of the appellant during the evening, he replied: "We was both in the same predicament, intoxicated."

An employee of Veteran Thrift Stores, Inc., testified that the Purple Heart Thrift Store was one of three stores operated by the corporation; that he had been employed by the corporation for six years; that he was the manager of the Purple Heart Thrift Store; that when he arrived at the store the police and burglar alarm representative were there; that he inspected the premises and observed "a skylight in the roof that had been broken open completely * * *." He checked the inventory and determined that nothing was missing. When asked to give the value of the inventory, he was permitted, over objection, to estimate the value to be three thousand dollars ($3,000).

In this appeal, it is contended that the lower court erred in failing to consider the legal effect of appellant's intoxication on his capacity to commit the offense. It is argued that an essential element of the offense is the existence of a specific felonious intent and that if the appellant was incapable of forming such intent, because of his intoxication, his conviction cannot be sustained.

It is true that where there is evidence that the accused was intoxicated at the time of the commission of a crime involving the element of intent, the trier of fact should give consideration to the effect of such intoxication upon his ability to formulate the required intent. As stated by this Court in *Michael v. State*, 1 Md. App. 243, 247:

> "Where a particular motive, intent or purpose is an essential element of a crime, drunkenness may be considered in determining whether or not the accused

> lacked the mental capacity to form the requisite motive, intent, or purpose, and if a sufficient mental incapacity is found to exist drunkenness may constitute a defense to the particular offense charged."

We went on to say, however, that the burden is on the accused to "persuade the triers of fact that, under the circumstances, he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted." *Michael,* supra, 247.

The record does not support the appellant's contention that the lower court failed to consider the effect of his intoxication on his capacity to commit the crime. In fact, the issue was specifically raised and extended arguments were presented to the court in support of the appellant's contention that he was incapable of forming the requisite intent because of his intoxication. It is also clear from the record that the trial judge considered and rejected the appellant's contention in this regard.

The trial judge was not required to believe the appellant's assertion that he was so "plastered" that he does not remember entering the building. *Logan v. State,* 1 Md. App. 213. Being judge of the credibility of the witnesses, *Gunther v. State,* 4 Md. App. 181, 185; *Dunlap v. State,* 1 Md. App. 444, 447, he could have found that the asserted failure to recollect was fabricated since the appellant's admitted conduct just prior to entering the building was that of an individual capable of exercising reasonable judgment. His decision that it was too late to disturb his girl friend and his decision to have his half brother take his camera home could have been viewed by the trial judge as decisions of an individual who was not so drunk as to be incapable of making a rational judgment. Moreover, to get into the building, the appellant had to exercise a certain amount of physical dexterity, for his entrance was made through a skylight on the top of a four-story building; the skylight "had been broken open completely"; he had to jump fifteen feet to a floor below; and he had to traverse three flights of stairs. Also, he was carrying a screw driver which could have been used as an implement to open the skylight. In addition, there was testimony by the alarm company representative that he detected

no alcohol on the appellant. Under these circumstances, we find no error in the lower court's rejection of the appellant's argument that, because of his intoxication, he was incapable of forming the intent requisite to sustain his conviction.

The appellant also contends that it was error to permit the manager of the Purple Heart Store to testify as to the value of the inventory in the building and that without his testimony the State failed to establish an intent to steal goods of the value of one hundred dollars ($100) or more. He argues that under the evidence produced by the State, the manager was "a mere employee who had not divulged the extent of his duties or area of expertise." It is true that the State failed to establish the scope of the manager's duties, responsibilities and authority and thus failed to show that he was familiar with the value of the contents of the building. But this is not necessarily fatal for we are here dealing with the question of the accused's *intent* to steal goods of the value of one hundred dollars ($100) or more. Perhaps the most conclusive method of proving that element of the crime is to establish the value of the goods actually stolen. Another method is to establish by appropriate testimony the value of the contents of the building where the breaking occurred. But these are not the sole methods, for it has been consistently held by the Court of Appeals of Maryland that proof of the intention to steal one hundred dollars ($100) or more need not be direct but may be inferred from the circumstances. *Felkner v. State,* 218 Md. 300; *Shipley v. State,* 220 Md. 463; *Holtman v. State,* 222 Md. 508; *McNeil v. State,* 227 Md. 298. Here there was evidence from which the trier of facts might have made a rational conclusion regarding the intention of the accused and this is all that is required. As stated by the Court of Appeals of Maryland in *Ridley v. State,* 228 Md. 281, at page 282:

> "The actual intention at the time of the breaking is controlling, not whether any goods of value were found and stolen, and the intention may be inferred from the circumstances."

In *Ridley,* the evidence showed that the accused entered a warehouse sometime between 2:30 a.m. and 4:30 a.m. by push-

ing in a window on the second floor and then ransacking the place, unintentionally setting off a burglar alarm to which the police responded. Although there was no testimony as to the value of the contents of the building, the court sustained the conviction under Md. Code, Art. 27, sec. 32, stating (at page 282) : "The early morning hour of the entering and the ransacking of the drawers were sufficient to support a logical inference that appellant intended to steal everything of value that he could find and carry away."

The case at bar is not unlike *Ridley*. Here the evidence of the extraordinary length to which the appellant went to gain entrance to the four-story building occupied by the Purple Heart Store, the setting off of the burglar alarm and the arrival of the police would support a rational inference that the appellant intended to steal everything of value that he could find and carry away from the inventory in the store, and that the execution of his intention was thwarted by the arrival of the police. Under the circumstances, we are of the opinion that the State met its burden of proving that the appellant broke and entered the premises with intention to steal goods of the value of one hundred dollars ($100) or more.

Assuming, without deciding, therefore, that it was error to admit the testimony of the manager as to value, it was harmless error, since there was other evidence from which to infer the appellant's intention.

*Judgment affirmed.*